OPINION
On February 25, 2000, Family Medicine Foundation, Inc. ("FMF") filed a complaint in the Franklin County Court of Common Pleas against Maria Nicole Bright, N. Gerald DiCuccio, Gail M. Zalimeni, and Butler, Cincione, DiCuccio and Barnhart ("law firm"). FMF sought, in part, a permanent injunction prohibiting the defendants from garnishing the assets and/or property of FMF. This case arose out of a medical malpractice lawsuit filed by Ms. Bright against the Thomas E. Rardin Family Practice Center. Mr. DiCuccio, Ms. Zalimeni and the law firm represented Ms. Bright in the medical malpractice suit. The procedural history of the medical malpractice lawsuit, which follows, is essential to understanding the present lawsuit.
On September 22, 1998, Ms. Bright filed a lawsuit against the Thomas E. Rardin Family Practice Center and three physicians, alleging medical malpractice. This lawsuit was assigned to Judge John Connor. The lawsuit averred that the Thomas E. Rardin Family Practice Center rendered medical care and treatment to Ms. Bright by and through its agents, employees, staff, nurses and/or residents. The Thomas E. Rardin Family Practice Center was located at 2231 North High Street in Columbus. There is evidence that the building at said location was named the Thomas E. Rardin Family Practice Center ("Practice Center") and was owned by The Ohio State University ("OSU"). The building housed a clinic which provided medical services to patients. Attending physicians at the Practice Center were employed by FMF, a non-profit Ohio corporation, and resident physicians were employed by OSU.
Ms. Bright's complaint was served on the Practice Center at 2231 North High Street. For various reasons, the three physicians were eventually voluntarily dismissed. The Practice Center did not file an answer or otherwise appear in the action. Therefore, Ms. Bright filed a motion for default judgment on June 24, 1999. Default judgment was granted in favor of Ms. Bright against the Practice Center, and a hearing on the issue of damages was held before a magistrate. The magistrate determined that Ms. Bright's damages were $978,840.41. On December 21, 1999, the trial court journalized a final judgment entry adopting the magistrate's decision and awarding judgment to Ms. Bright against the Practice Center for $978,840.41.
On or about January 18, 2000, OSU filed a motion to vacate the default judgment rendered against the Practice Center on the basis the trial court lacked subject-matter jurisdiction. OSU asserted that the Practice Center was not a legal entity but was a building owned by OSU. OSU contended that the trial court lacked subject-matter jurisdiction over actions against the state and its instrumentalities. OSU argued that because the Practice Center was an asset of OSU, the Court of Claims of Ohio had exclusive jurisdiction over the matter.
On February 4, 2000, Ms. Bright filed a memorandum contra asserting OSU had no standing as it was not a party to the lawsuit and contending the Practice Center was not merely a building but was the fictitious name of a corporation — FMF — whose purpose was to provide medical care.
On February 8, 2000, Ms. Bright filed a motion for examination of judgment debtor, requesting an order that FMF's statutory agent appear for examination regarding satisfying the default judgment. Attached to such motion was the affidavit of Ms. Bright's counsel, Mr. DiCuccio, which stated that Ms. Bright had obtained judgment against FMF, dba the Practice Center, and that said judgment was unpaid in whole. On February 9, 2000, six banks were served with notices of garnishment which named FMF, dba the Practice Center, as the judgment debtor.
On February 11, 2000, FMF filed a motion to intervene in the action and to file a memorandum in support of OSU's motion to vacate the default judgment. FMF pointed out that Ms. Bright's February 4, 2000 memorandum contra stated that the party affected by the default judgment was FMF, dba the Practice Center. FMF argued that it was never a party to the lawsuit, that the default judgment was rendered against a non-entity and that such default judgment was void.
A hearing was held on OSU's motion to vacate the default judgment and on FMF's motion to intervene. On February 25, 2000, the trial court filed an entry and order denying the motions to intervene and to vacate and finding OSU's motion to vacate moot.[1]
On this same date, FMF filed the instant action asserting it was entitled to injunctive relief prohibiting Ms. Bright and her attorneys from executing upon FMF's assets on the basis that the default judgment in the medical malpractice lawsuit was not rendered against FMF. The present suit was assigned to Judge David Johnson.
On March 15, 2000, Mr. DiCuccio, Ms. Zalimeni and the law firm filed an answer and a counterclaim. The counterclaim sought, in part, a declaration that FMF operated a clinic known as the Practice Center, that FMF employed physicians who attended patients at the Practice Center, that FMF contracted to provide services to patients at the Practice Center, that the Practice Center, which was a fictitious "dba" of FMF, was properly named in the medical malpractice suit and that there existed a valid, enforceable judgment against the Practice Center for which FMF was liable. On this same date, Ms. Bright filed an answer and counterclaim seeking essentially the same declaratory relief.
A trial was held before the court. On October 30, 2000, the trial court rendered a decision on FMF's complaint. The trial court found, in part, that the defendants had not knowingly maintained the medical malpractice suit against a fictitious entity and, therefore, found in favor of the defendants on FMF's complaint.
On November 16, 2000, the trial court rendered a decision on defendants' counterclaims. Again, the trial court found the defendants had not knowingly maintained an action against a fictitious entity. The trial court found that FMF was the only "agency" operating at the Practice Center and that FMF used the name of the Practice Center to carry on its business. The trial court concluded that the default judgment against FMF in the medical malpractice was not void and was enforceable against FMF. Accordingly, the trial court found in favor of the defendants on their counterclaim. A final judgment entry was journalized on November 29, 2000.
FMF (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 1. The Trial Court Erred To The Prejudice Of FMF In Rendering A Declaratory Judgment For Appellees Because The Trial Court Lacked Subject Matter Jurisdiction To Hear And Determine The Merits Of Appellees' Counterclaims For Declaratory Relief.
 2. The Trial Court Erred To The Prejudice Of FMF In Determining That Appellees Did Not Knowingly Maintain An Action Against A Non-Legal Entity.
In its first assignment of error, appellant asserts the trial court lacked subject-matter jurisdiction over the counterclaims of Ms. Bright, Mr. DiCuccio, Ms. Zalimeni and the law firm (hereinafter collectively referred to as "appellees"). Appellant contends the trial court in the medical malpractice lawsuit retained jurisdictional priority over the default judgment against appellant and all issues arising therefrom and, therefore, the trial court here lacked subject-matter jurisdiction over the issues raised in appellees' counterclaims.
The jurisdictional priority rule states that as between state courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all tribunals, to adjudicate upon the whole issue and to settle the rights of the parties. State ex rel. Dannaher v. Crawford (1997),78 Ohio St.3d 391, 393, citing State ex rel. Racing Guild of Ohio v. Morgan (1985), 17 Ohio St.3d 54, 56. Generally, the jurisdictional priority rule operates if the claims or causes of action are the same in both cases, and if the second case is not for the same cause of action nor between the same parties, the former suit will not prevent the latter. Dannaher at 393, citing State ex rel. Sellers v. Gerken (1995),72 Ohio St.3d 115, 117.
However, the rule may apply even if the causes of action and relief requested are not exactly the same. Id. at 117. The issue is whether the two cases involve the same "whole issue" or matter. Michaels Bldg. Co. v. Cardinal Fed. S. L. Bank (1988), 54 Ohio App.3d 180, 182. Such a determination requires a two-step analysis: (1) there must be cases pending in two different courts of concurrent jurisdiction involving substantially the same parties; and (2) the ruling of the court subsequently acquiring jurisdiction may affect or interfere with the resolution of the issues before the court where suit was originally commenced. Id. at 183. For the reasons that follow, we find that the jurisdictional priority rule has no application to the case at bar.
Appellant contends Judge Connor has jurisdictional priority over the issues involved in the present case as long as appellant's Civ.R. 60(B) motion(s) to vacate the default judgment and the garnishment proceedings are pending before Judge Connor. Appellant asserts that the declaratory judgment sought by appellees would affect and interfere with resolution of the issues before Judge Connor. The two cases involved herein are the medical malpractice lawsuit filed by Ms. Bright against the Practice Center and appellant's complaint against appellees for injunctive relief and appellees' counterclaims for declaratory judgment. There is no question that the present suit arose out of the first proceeding. However, the jurisdictional priority rule is not implicated for several reasons.
The claims/causes of action and parties are different in the two cases. The case before Judge Connor was a medical malpractice lawsuit between Ms. Bright and the Practice Center. The instant case involves, essentially, the status of the default judgment obtained by Ms. Bright in the medical malpractice lawsuit and is between appellant, Ms. Bright, Mr. DiCuccio, Ms. Zalimeni and the law firm. The cases do not involve the same whole issue or matter.
More importantly, however, the jurisdictional priority rule requires that there be two cases pending. The medical malpractice case, for all intents and purposes, is over. Default judgment was granted to Ms. Bright on December 21, 1999. This was a final order. While Civ.R. 55(B) allows a default judgment to be set aside in accordance with Civ.R. 60(B), Civ.R. 60(B) states that a motion thereunder does not affect the finality of the default judgment. Therefore, there are not two cases pending. It is immaterial that garnishment proceedings or Civ.R. 60(B) motions may still be pending in the medical malpractice case. Again, the December 21, 1999 default judgment terminated the case. If anything, Judge Johnson in the current case had jurisdictional priority over appellant's pending Civ.R. 60(B) motions before Judge Connor which involve essentially the same issues as the present case and which were filed subsequent to the present suit.
Given all of the above, the jurisdictional priority rule does not bar the present suit.
Appellant also contends that the trial court could not properly render a declaratory judgment. Appellant asserts that because of the pending Civ.R. 60(B) motions in the medical malpractice lawsuit, no actual controversy exists between the parties and speedy relief is not necessary. However, as discussed above, the present action was filed prior to appellant's Civ.R. 60(B) motions before Judge Connor, and such motions do not affect the finality of the default judgment. As such, a real, justiciable controversy exists between the parties upon which speedy relief is required.
We note further that appellant's main contention is that the default judgment granted by Judge Connor is void because it was rendered against a non-entity. As will be addressed infra, judgments against non-entities are void. A Civ.R. 60(B) motion to vacate a judgment is not the proper avenue by which to obtain a vacation of a void judgment. See Old Meadow Farm Co. v. Petrowski (Mar. 2, 2001), Geauga App. No. 2000-G-2265, unreported; Copelco Capital, Inc. v. St. Mark's Presbyterian Church (Feb. 1, 2001), Cuyahoga App. No. 77633, unreported. Rather, the authority to vacate void judgments is derived from a court's inherent power. Oxley v. Zacks (Sept. 29, 2000), Franklin App. No. 00AP-247, unreported, citing Rite Rug Co., Inc. v. Wilson (1995), 106 Ohio App.3d 59,62-63 and CompuServe, Inc. v. Trionfo (1993), 91 Ohio App.3d 157, 161. A party wishing to contest a court's jurisdiction may file a simple motion to vacate or a declaratory judgment action. Old Meadow Farm Co. at note 3, citing Civ.R. 60, 1970 Staff Note.
For all of the above reasons, we find that the declaratory judgment action in the case at bar was properly brought.
In summary, the jurisdictional priority rule has no application to the case at bar, and appellees properly brought a declaratory judgment action. Accordingly, appellant's first assignment of error is overruled.
In its second assignment of error, appellant contends the trial court erred in concluding that appellees had not knowingly maintained an action against a non-legal entity. Appellant asserts the evidence shows appellees were on notice that they had sued a fictitious, non-existent entity and that any judgment rendered against such non-entity is void. Appellees argue that the trial court's judgment was not against the manifest weight of the evidence and that the trial court properly concluded they had not sued a non-legal entity. Appellees contend that for the judgment to be void on the basis that the medical malpractice case was never commenced, it must be shown that appellees knew appellant existed, that appellant used the Practice Center as a fictitious name, and that appellant was the only proper party to be sued. Appellees assert the evidence showed Ms. Bright commenced suit against the Practice Center because she believed the physicians were employed by or were agents of the Practice Center and that appellees had no knowledge appellant was hiding behind the Practice Center.
The trial court found that under Patterson v. V M Auto Body (1992),63 Ohio St.3d 573, appellant had to show that appellees knowingly maintained a lawsuit against the fictitious Practice Center. The trial court concluded that appellant had not shown such knowledge on the part of appellees. For the reasons that follow, we find the trial court erroneously found in favor of appellees on their counterclaim and on appellant's complaint.
In Patterson, the Supreme Court of Ohio stated that the issue in the case was whether a lawsuit could be knowingly maintained against a defendant solely under the fictitious name in which the defendant did business. Id. at 574. The Supreme Court concluded that a lawsuit could not be so maintained. Id. In Patterson, the plaintiff filed suit against V M Body Shop ("V M"), and V M filed an answer. V M served two amended answers on the plaintiff, both of which asserted a defense of lack of capacity to be sued. Id. at 574. The case went to trial, and the evidence showed that V M was a sole proprietorship owned by Victor Searfoss. Id. After the plaintiff's case, the defendant moved to dismiss, again asserting its lack of capacity to be sued. Id. This motion was denied. Id. The plaintiff never moved to amend his complaint. On appeal, the court of appeals held that V M was a non-legal entity, and the trial court should have stricken the action from its docket sua sponte. Id.
The Supreme Court stated it was well-established that both the plaintiff and defendant in a lawsuit must be legal entities with the capacity to be sued. Id. A sole proprietorship has no legal identity separate from the individual who owns it, and the individual remains personally liable regardless of whether the business is conducted under a fictitious name. Id. at 574-575. The proper party, therefore, was Mr. Searfoss, doing business as V M. Id. at 575. The Supreme Court stated that the plaintiff had been notified on at least three occasions that he had sued the wrong defendant, such occasions being the two amended answers and the motion to dismiss which alleged lack of capacity to be sued. Id. The plaintiff would have had adequate time to amend his complaint to name the proper party. Id.
The Supreme Court stated that if a defendant in a lawsuit is not an actual or legal entity, then any judgment rendered against it is void. Id. at 576, citing Cobble v. Farmer's Bank (1900), 63 Ohio St. 528. The only exception to this is when the defendant uses the mistake in an attempt to deceive the other parties and the court, which Mr. Searfoss had not attempted to do. Patterson at 576-577. The Supreme Court concluded that the lawsuit had never been commenced under Civ.R. 3(A) because it was brought against a non-entity. Id. at 576-577.
Again, appellees contend the essential issue is whether they had knowledge that they had maintained the medical malpractice lawsuit solely in the fictitious name under which appellant did business. First, we disagree with appellees' and the trial court's characterization of the Supreme Court's analysis in Patterson. The trial court here stated there was considerable confusion on the issue of who was the proper party to be sued and concluded appellant had not proven by clear and convincing evidence that appellees knowingly maintained an action against a fictitious name. (Oct. 30, 2000 Decision at 2.) However, Patterson did not require actual knowledge on the part of the plaintiff therein; rather, mere notice that a non-entity had been sued was enough.
Indeed, in Patterson the plaintiff initially was on notice only that the defendant had raised the defense of lack of capacity to be sued. Id. at 574. It was at trial that it was disclosed that the named defendant was a sole proprietorship owned by Victor Searfoss. Id. The Supreme Court held that the plaintiff was put on notice three times that he had sued the wrong defendant, and such notice included the mere raising of the defense of lack of capacity to be sued. Id. at 575. Hence, notice that the wrong defendant may have been named is sufficient, and actual knowledge is not required to be shown.
Further, Patterson is limited to its facts. Patterson does not stand for the broad principle that a plaintiff may commence and/or maintain a lawsuit against a non-entity as long as the plaintiff has not been on notice of such. The only concrete principle set forth in Patterson is that a judgment rendered against a non-existent, non-legal entity is void, and the only exception to this is where the defendant uses the mistake in an attempt to deceive the other parties and the court. However, in Patterson, the Supreme Court looked beyond the mere fact that the plaintiff had sued a non-entity. The reason for this is that the non-entity had filed an answer and proceeded with the case against it. Hence, the plaintiff reasonably could believe that he had sued an actual entity and the proper party. However, once the plaintiff was on notice that he may have sued the wrong party (by way of the defense of lack of capacity to be sued raised in the answers), he had an obligation to amend the complaint to name the correct party.
Hence, we read Patterson to mean that when a non-entity has been named as a defendant in a complaint, and such non-entity "enters" the case by, for example, filing an answer or otherwise "appearing" in the case, and the plaintiff later has notice that a non-entity has been named, the plaintiff must amend the complaint to name the proper defendant. Otherwise, the plaintiff has sued a non-entity, and any judgment rendered against such non-entity is void.
The facts in the case at bar are distinguishable and for this reason, the analysis in Patterson does not apply. Here, the Practice Center was the non-entity named as a defendant, and the Practice Center did not "appear" in the case. No answer was filed by the Practice Center, and the Practice Center made no other appearances in the case. The record does reflect that service of summons and the complaint was sent via certified mail to the Practice Center at 2231 N. High Street. The return service was signed by Laura Vogel, appellant's employee, on September 28, 1998. However, this fact is insufficient to require us to engage in the notice analysis set forth in Patterson. To find otherwise could lead to unfair results. Notwithstanding this, the record shows that appellant did not attempt to deceive Ms. Bright, her attorneys or the trial court with regard to the actual owner/operator of the Practice Center.
In summary, this case is clearly distinguishable on its facts from Patterson, where the non-entity filed an answer and proceeded with the case against it. Here, Ms. Bright filed a complaint against a non-entity. Such non-entity never answered or otherwise appeared in the matter. Default judgment was rendered against such non-entity. Under Patterson, judgments rendered against non-entities are void. Hence, the default judgment against appellant is void.
Appellees also contend they could maintain the medical malpractice case in the fictitious name of the Practice Center pursuant to R.C. Chapter 1329. R.C. 1329.01 states:
 (A) As used in sections 1329.01 to 1329.10 of the Revised Code:
* * *
 (2) "Fictitious Name" means a name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name. It does not include the name of record of any domestic corporation that is formed under Chapter 1701. or 1702. of the Revised Code * * *.
The record before us establishes that the Practice Center was a fictitious name. R.C. 1329.10(C) states:
 An action may be commenced or maintained against the user of a trade name or fictitious name whether or not the name has been registered or reported in compliance with section 1329.01 of the Revised Code.
Appellees contend R.C. 1329.10(C) allowed the medical malpractice suit to be commenced and maintained in the name of the Practice Center. However, R.C. 1329.10(C) does not so allow. R.C. 1329.10(C) allows a suit to be commenced or maintained against the user of a fictitious name, not in the name of the fictitious "entity" itself. In the case at bar, the user of the fictitious name is appellant-FMF.
Appellees cite Martin v. Bedroom Emporium (Dec. 24, 1997), Summit App. No. 18509, discretionary appeal not allowed in (1998), 81 Ohio St.3d 1516, and Forest City Tree Protector Co. v. Crotty (Jan. 9, 1992), Cuyahoga App. No. 59443, in support of their argument. In Martin, the plaintiff brought suit against Bedroom Emporium and two other defendants. Bedroom Emporium did not file an answer. Hence, the plaintiff's motion for default judgment was granted. Bedroom Emporium then filed a motion to vacate the default judgment, and this was denied.
On appeal, Bedroom Emporium argued the judgment against it was void for lack of personal jurisdiction, and it could not be sued under its fictitious name. The actual party was Akron Waterbeds, Inc., who was never properly served. Citing R.C. 1329.01(A), the court of appeals stated that Bedroom Emporium was a fictitious name used by Akron Waterbeds, Inc. The court of appeals stated that under R.C. 1329.10(C), an action may be commenced or maintained against the user of a fictitious name. The court then held that the plaintiff could maintain the action against Bedroom Emporium.
We disagree with the court of appeals in Martin to the extent it held that a case may be commenced or maintained in the name of a fictitious entity.[2] In addition, we note a case from this court, Kennedy v. Coaxial Communications (Jan. 22, 1987), Franklin App. No. 86AP-693, wherein this court held, in essence, that under R.C. 1329.10(C) the plaintiff properly brought suit in the name of "Coaxial Communications" which was a trade name and not a distinct business entity. We disagree with our court's decision in Kennedy to the extent it held R.C. 1329.10(C) permits the commencement and/or maintenance of a suit in a fictitious or trade name. Again, the plain language of R.C. 1329.10(C) permits such suit only against the user of a trade or fictitious name, not in the name of the trade or fictitious entity.
The fictitious name statutes as a whole support our reading of the plain language of R.C. 1329.10(C). For example, under R.C. 1329.01(D), a person who does business under a fictitious name and who has not and does not wish to register the fictitious name as a trade name or cannot so register because the name is not available must report the use of such fictitious name to the secretary of state, setting forth the name of the user and the fictitious name being used, among other things. Under R.C.1329.01(A)(3), a "person" includes such entities as corporations, individuals and general partnerships.
R.C. 1329.10(B) prohibits persons doing business under a fictitious name from commencing or maintaining an action in the fictitious name until the person has first complied with R.C. 1329.01. In Buckeye Foods v. Cuyahoga Cty. Bd. of Revision (1997), 78 Ohio St.3d 459, the Supreme Court held that R.C. 1329.10(B) prevents a person from commencing or maintaining an action in a fictitious name until the person has registered the name with the secretary of state. Id. at 461. Further, the court held that a person doing business under an unregistered, fictitious name lacks the legal capacity to sue. Id.
R.C. 1329.10(C), however, states that an action may be commenced or maintained against the user of a fictitious name, whether or not such name has been reported under R.C. 1329.01. R.C. 1329.10(C) is different from R.C. 1329.10(B) in two respects. First, R.C. 1329.10(B) deals with, in essence, plaintiffs who are persons doing business under fictitious names, while R.C. 1329.10(C) addresses defendants. In addition, R.C.1329.10(B) allows the plaintiff/person doing business under a fictitious name to commence or maintain a lawsuit in such fictitious name only if the fictitious name has been reported. R.C. 1329.10(C), however, allows an action against the user of a fictitious name regardless of whether such fictitious name has been registered. The reporting requirement is immaterial in R.C. 1329.10(C) because the suit is commenced or maintained against the user of the fictitious name and not in the fictitious name itself. In other words, R.C. 1329.10(C) authorizes commencing or maintaining the suit against the actual legal entity using the fictitious name.
The legislature chose to use the word "user" in R.C. 1329.10(C) and presumably did so for a specific purpose. We also note that our plain reading of R.C. 1329.10(C) is consistent with Patterson, supra. Again, the Supreme Court in Patterson stated that a defendant must be a legal entity with the capacity to be sued and that the "dba" of a sole proprietorship was not the proper party to be sued. Id. at 574-575. Rather, it was the user of the "dba," Mr. Searfoss, who was the proper party to be sued. Id. at 575.
For all of the above reasons, we decline to follow Martin and Kennedy and hold that pursuant to R.C. 1329.10(C), a suit cannot be commenced or maintained against the user of a fictitious name when such suit is brought solely in the fictitious name.
Accordingly, the default judgment taken against the Practice Center is void as such judgment was granted against a non-legal entity. The trial court erred in concluding otherwise. The trial court should have granted appellant's request for injunctive relief prohibiting appellees from their efforts to garnish appellant's assets/property. Further, the trial court erred in granting judgment to appellees on their counterclaims to the extent the trial court determined that the default judgment against appellant was not void and was enforceable against appellant. For these reasons, appellant's second assignment of error is sustained.
In summary, appellant's first assignment of error is overruled. Appellant's second assignment of error is sustained. For the reasons and to the extent stated above, the judgment of the Franklin County Court of Common Pleas is reversed. This cause is remanded to such court with instructions to enter judgment in favor of appellant consistent with this opinion.
 ______________________ TYACK, J.
BRYANT, P.J., concurs. LAZARUS, J., concurs with BRYANT, P.J.
[1] On June 30, 2000, FMF filed with Judge Connor a Civ.R. 60(B) motion to vacate the default judgment. FMF filed a second Civ.R. 60(B) motion in the same case on September 28, 2000.
[2] We also note that Forest City Tree Protector, Co. is not on point as the portion addressing R.C. 1329.10(C) was merely dicta. Notwithstanding this, we disagree with the Cuyahoga County court's conclusions regarding R.C. 1329.10(C) for the same reasons we disagree with the holding in Martin.